1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                          Plaintiff,<br><br>     v.<br><br>OFFICE OF MANAGEMENT AND<br>BUDGET,<br><br>                          Defendant. | CASE NO. 2:21-cv-00564-TL<br><br>ORDER ON PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND MOTION<br>FOR STATUS CONFERENCE |

This matter comes before the Court on the State of Washington's ("Plaintiff's" or "Washington's") motion for summary judgment (Dkt. No. 13) and motion requesting a status conference (Dkt. No. 29). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein and finds that oral argument is unnecessary. Washington seeks summary judgment against the United States Office of Management and Budget ("Defendant" or "OMB" or "Agency") for failing to meet its obligations under the Freedom of Information Act ("FOIA"). Specifically, Washington claims that OMB (1) failed to provide a required determination regarding its records request and (2) improperly delayed

production of responsive records. As discussed below, the Court GRANTS IN PART and DENIES IN PART Washington's motion for summary judgement. Consequently, the Court DENIES Washington's request for a status conference as moot.

## I.     BACKGROUND

This is Washington's second round of FOIA litigation arising from requests for records related to the Federal National Archives in Seattle.

A.     **FOIA Litigation: Round 1**

In February 2020, after learning of a proposed plan to sell the Seattle National Archives building, Washington requested records about the federal government's plans from four different federal agencies involved in the planning, including Defendant. In August and September 2020, Washington filed similar FOIA lawsuits against each agency alleging the agencies failed to promptly respond. *See State of Washington v. Office of Management and Budget*, 2:20-cv-1231-RSL (W.D. Wash. 2020); *State of Washington v. U.S. National Archives and Records Administration*, 2:20-cv-1232-RSL (W.D. Wash. 2020); *State of Washington v. U.S. General Services Administration*, 2:20-cv-1233-RSL (W.D. Wash. 2020); *State of Washington v. Public Buildings Reform Board*, 2:20-cv-1364-RSL (W.D. Wash. 2020). In December 2020—4 months after filing the lawsuit and 10 months after its original FOIA requests—Washington was granted summary judgment in its case against the Public Buildings Reform Board. *See State of Washington v. Public Buildings Reform Board*, 2:20-cv-1364-RSL at Dkt. No. 18. There, the Court ordered the agency to produce all remaining responsive documents on an expedited timeline. *Id.* All four cases subsequently resolved through cooperation of the parties without the need for further judicial intervention by December 2021.

1

B.    **FOIA Litigation: Round 2**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

This case arises from a new set of FOIA requests for additional records related to the National Archives building that Washington made on February 25, 2021. Dkt. No. 13 at 6. On February 26, OMB acknowledged receipt of the request and provided a tracking number. Dkt. No. 19 at 2-3. Since Washington did not request expedited processing, OMB scheduled the request for standard processing. *Id.* While that process was underway, this lawsuit was filed in April 2021.[1] Dkt. No. 1. Like the Round 1 cases, Washington alleges the Agency has failed to meet its FOIA obligations in responding to the new February 2021 request.

After the lawsuit was initiated, counsel for the Agency began communicating with counsel for Washington regarding the Agency's progress. Washington acknowledges that the Agency identified a "large volume of materials" that it was reviewing. Dkt. No. 13 at 7. The Parties worked cooperatively to identify appropriate search parameters to make the process more efficient and started to negotiate a stipulated production schedule. *Id.* at 7, Dkt. No. 19 at 3-6. Despite these communications, by August 2021 (six months after making the new FOIA requests and four months after filing the lawsuit), Washington had not received any of the identified documents, although the Agency had committed to making its initial production by August 30 and proposed a rolling production schedule through April 2022. Dkt. No. 11 at 7; Dkt. No. 19 at 5, 9.

19

20

21

22

Washington moved for summary judgment on August 19, requesting injunctive relief in the form of an expedited production schedule. Dkt. No. 13. The motion, originally noted for September 10, 2021, was voluntarily re-noted for October 1 by Washington (see Dkt. No. 16),

23

24

---

[1] Plaintiff has also asserted similar claims against the other three agencies from the Round 1 litigation in separate lawsuits. *See State of Washington v. U.S. National Archives and Records Administration*, No. 2:21-cv-00565-TL (filed Apr. 27, 2021); *State of Washington v. Public Buildings Reform Board*, No. 2:21-cv-00566-TL (filed Apr. 27, 2021); *State of Washington v. U.S. General Services Administration*, No. 2:21-cv-00794-TL (filed Jun. 11, 2021).

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS
CONFERENCE - 3

and the briefing schedule was adjusted accordingly by stipulation of the parties. *See* Dkt.

Nos. 17, 18. The Agency appears to have met its initial production commitment and has

continued making rolling productions. Dkt. No. 23 at 7-8.

In late November 2021, the Parties further stipulated to continuing the previously adopted

dispositive motion briefing schedule and revisiting the need for additional dispositive motions

after Washington's then pending motion for summary judgment was resolved. Dkt. Nos. 25, 26.

On February 16, 2022, Washington filed an opposed motion requesting a status conference with

the Court. Dkt. Nos. 32, 33, 34.

## II.   SUMMARY JUDGMENT STANDARD

Most FOIA cases resolve on summary judgment. *Animal Legal Def. Fund v. U.S. Food &*

*Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc) (per curiam). Summary judgment is

appropriate where, viewing "the evidence in the light most favorable to the nonmoving party,"

the court determines that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). Material facts

are those which might affect the outcome of the suit under governing law. *Moujtahid v. United*

*States Citizenship & Immigr. Servs.*, 2020 WL 4000980, at *3 (W.D. Wash. July 15, 2020)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To survive summary

judgment "the nonmoving party must make a 'sufficient showing on an essential element of her

case with respect to which she has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986)).

## III.   DISCUSSION

FOIA establishes a "judicially enforceable public right" of access to federal agency

records. *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 639 F.3d 876, 882 (9th Cir. 2010),

*abrogated on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989. In doing so, it imposes

certain requirements upon any federal agency presented with a valid records request, including a

duty to: (1) determine within 20 days—or 30 days in unusual circumstances—whether to comply

with the request (*see* 5 U.S.C. § 552(a)(6)(A), (B)); and (2) make all appropriately requested

records promptly available to the requestor (5 U.S.C. § 552(a)(3)(A)). An agency may withhold

or redact otherwise responsive records by invoking any of nine narrowly construed statutory

exceptions. 5 U.S.C. § 552(b). However, "FOIA's strong presumption in favor of disclosure

means that an agency that invokes one of the statutory exemptions to justify the withholding of

any requested documents or portions of documents bears the burden of demonstrating that the

exemption properly applies to the documents." *Elec. Frontier Found.*, 639 F.3d at 883 (internal

quotations and citations omitted).

Plaintiff seeks summary judgment on its FOIA claims by arguing that Defendant has

failed to meet its FOIA obligations in two ways: (1) it has failed to provide an initial

determination; and (2) it has failed to promptly produce responsive records.

A.     **FOIA's Determination Requirement**

FOIA requires an agency to make its initial determination within 20 days of receiving a

request or within 30 days under unusual circumstances. 5 § 552(a)(6)(A)(i), (a)(6)(B)(i); *see also*

*Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021); *Citizens for*

*Resp. & Ethics in Washington v. Fed. Election Comm'n* (*CREW*), 711 F.3d 180, 182 (D.C. Cir.

2013). The agency's determination must include "the scope of the documents that the agency

will produce, as well as the scope of the documents that the agency plans to withhold under any

FOIA exemptions." *CREW*, 711 F.3d at 186; *accord Aguirre*, 11 F.4th at 726 n.1 (citing to

*CREW* as "delineating the requirements for a proper response"). Defendant appears to concede

that it missed its statutory deadline but argues that it eventually met its determination obligations

by informing Plaintiff of the results of its search efforts, the scope of exemptions invoked in its

1   initial productions, and its expectation that similar exemptions would be required for future

2   productions. Dkt. No. 19 at 17-18. Plaintiff argues that the information Defendant has provided

3   is not specific enough to communicate the scope of documents it will produce or withhold,

4   sufficient to meet its FOIA obligations. Dkt. No. 23 at 2-3. Although undeniably untimely, the

5   Court finds that Defendant has nonetheless met its obligation to provide a substantive

6   determination.

7          An agency's substantive determination obligations are met once the requestor has "actual

8   notice" of the information required for a determination. *Jud. Watch, Inc. v. U.S. Dep't of Just.*,

9   410 F. Supp. 3d 216, 224 (D.D.C. 2019). The record here indicates that the Parties worked

10  cooperatively, at least until Plaintiff decided to file this motion, to identify the universe of

11  documents that would be reviewed for responsiveness and exemption based on negotiated search

12  parameters and then to determine a production schedule based on the results of those searches.

13  Thus, Plaintiff was fully aware of the scope of records involved in its request. Further, having

14  produced a subset of those records upon which exemption determinations were made, Defendant

15  appears to have met its obligations as to the scope of potential exemptions contemplated in

16  *CREW. See Cmty. Ass'n for Restoration of the Env't, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039,

17  1049 (E.D. Wash. 2014) (finding that it was sufficient for the agency to inform the requestor that

18  it would apply similar exemptions to future productions as were applied to a subset of documents

19  previously produced).

20         In its reply to the Agency's opposition, Washington challenges some of the exemptions

21  that the Agency invoked in the limited production it had received at that time, arguing that the

22  Agency therefore failed to meet its determination obligations. Dkt.  No. 23 at 7-9. An agency

23  may withhold or redact records by invoking any of nine narrowly construed statutory exceptions,

24  5 U.S.C. § 552(b), but the agency "bears the burden of demonstrating that the exemption

properly applies to the documents." *Elec. Frontier Found.*, 639 F.3d at 883 (internal quotations and citations omitted). Specifically, Washington argues that the Agency failed to produce a *Vaughn* index, or the equivalent, with its initial productions. Dkt. No. 23 at 8-9. While the Court is concerned about Washington's allegations regarding the lack of information provided by the Agency to support its invocation of exemptions, the Court notes that a *Vaughn* index is typically the product of litigation and is not a requirement under the statute. *See Minier v. Cent. Intel. Agency*, 88 F.3d 796, 804 (9th Cir. 1996) ("[C]ourts often require Vaughn indices . . . . Vaughn indices, however, are not appropriate in all FOIA cases."); *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1189 (N.D. Cal. 2006) ("Initial agency responses to FOIA requests are not required to contain a Vaughn index."). Further, the Agency had produced only a fraction of the documents involved in this litigation at the time Washington filed its motion, and the Court does not intend to make exemption determinations on a piecemeal basis, as that would be extremely inefficient.

The appropriate "penalty" for an agency missing its determination deadline "is that the agency cannot rely on [FOIA's] administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189. OMB does not challenge Washington's lawsuit on administrative exhaustion grounds, but instead argues that Washington cannot receive its requested relief on summary judgment due to the Agency's untimely determination. Dkt. No. 19 at 19-21. On the contrary, Washington argues that injunctive relief is appropriate where there is a demonstrated pattern or practice of violations by the Agency and where the delay in providing a determination is egregious. Dkt. No. 13 at 11; Dkt. No. 23 at 3-4.

1.   <u>Washington Fails to Raise an Actionable Pattern or Practice Claim</u>

"[P]attern-or-practice claims are viable under FOIA" when adequately alleged. *Aguirre*, 11 F.4th at 728; s*ee also Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1107 (9th Cir. 2016) (noting that "FOIA's prescribed relief is injunctive or declaratory, [so] generally a

1   plaintiff alleging a pattern or practice claim under FOIA must also meet th[e] future harm

2   requirement" to establish standing). Washington argues that it has adequately alleged a pattern or

3   practice claim that warrants injunctive relief. Dkt. No. 13 at 11-13. The Agency responds that no

4   such claim was raised in Washington's Complaint, nor were sufficient facts alleged in the

5   Complaint to establish standing for a pattern or practice claim. Dkt. No. 19 at 20. Washington

6   counters by arguing that "it did include allegations regarding OMB's prior FOIA violations

7   related to the same subject matter" in its Complaint. Dkt. No. 23 at 4. The only allegations

8   regarding its prior FOIA requests included in Washington's Complaint are an oblique reference

9   to this being the second round of FOIA requests related to the Seattle National Archives, Dkt.

10  No. 1 at ¶ 1, and a footnote referencing the then still pending litigation stemming from the first

11  round of requests. *Id.* at 1 n.1. Even if these references were sufficient to imply a pattern or

12  practice claim was being raised, as Washington appears to argue, they are not sufficient to meet

13  the future harm requirement needed to establish standing for such a claim. Nor may Washington

14  amend its Complaint through briefing on summary judgment.

15          2.      <u>OMB's Delay Was Not Egregious</u>

16          Washington argues that the amount of time between its initial request and the Agency's

17  initial production demonstrates an egregious delay. Dkt. No. 13 at 11-12. Washington relies

18  primarily on *P.W. Arms, Inc. v. United States*, which found that a 20-month delay before the

19  agency in question even initiated a search was sufficiently egregious to warrant injunctive relief.

20  *P.W. Arms, Inc. v. United States*, 2017 WL 319250, at *2 (W.D. Wash. Jan. 23, 2017). Similarly,

21  Washington points to *Oregon Natural Desert Association v. Gutierrez*, where the requestor was

22  left in the dark for eight months without a response from the agency. *Oregon Nat. Desert Ass'n v.*

23  *Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006). Even though length of delay was a

24  consideration in these cases, it was not the sole determinative factor in deciding that the

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS
CONFERENCE - 8

1   agencies' actions constituted egregious delay. Unlike in *P.W. Arms* or *Gutierrez*, here the

2   Agency: (1) actively communicated with Washington about its efforts to identify the universe of

3   potentially responsive documents; (2) worked with Washington to ensure it was conducting the

4   appropriate searches; and (3) upon identifying the scope of potentially responsive documents,

5   cooperated with Washington to negotiate a review and production schedule. Dkt. No. 13 at 7;

6   Dkt. No. 19 at 3-8. At no point was Washington left completely in the dark as to whether the

7   Agency would respond to its request. To the contrary, Washington was kept informed of the

8   Agency's progress along the way.

9           While there is no doubt that the Agency failed to meet the statutory deadline for

10   providing a complete determination, its actions do not rise to the level of egregious delay as to

11   warrant injunctive relief. The appropriate "penalty" for the Agency's delay is to relieve

12   Washington of FOIA's administrative exhaustion requirement, but that is not at issue here. This

13   approach preserves the "[statutory] scheme [that] provides an incentive for agencies to move

14   quickly but recognizes that agencies may not always be able to adhere to the timelines that

15   trigger the exhaustion requirement." *CREW*, 711 F.3d at 189.

16           Plaintiff is not entitled to its requested relief for Defendant's untimely determination as a

17   matter of law. The Court therefore DENIES summary judgement on these grounds.

18   B.      **FOIA's Prompt Production Requirement**

19           Agencies are expected to make requested documents "promptly available" which

20   typically means "within days or a few weeks . . . not months or years." *CREW*, 711 F.3d at 188;

21   *see also Kinnucan v. Nat'l Sec. Agency*, 2021 WL 6125809, at *9 (W.D. Wash. Dec. 28, 2021)

22   (same) (quoting *CREW*, 711 F.3d at 188). Here, more than four months elapsed before the

23   Agency was prepared to even begin producing documents and, even then, at a relatively

24   constrained pace. Dkt. No. 19 at 5. The Agency's proposed rolling productions would not be

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS
CONFERENCE - 9

completed until April 2022—more than 13 months after receipt of the request. *Id.* at 9. That this

kind of months long delay could result in summary judgement should be no surprise to the

Agency. *See Public Buildings Reform Board*, 2:20-cv-01364-RSL at Dkt. No. 18 (granting

summary judgment to the Plaintiff for the Agency's failure to promptly produce documents in a

case involving similar parties, represented by the same counsel, regarding similar requests, under

similar circumstances).

The Parties appear to agree that such a delay is excusable if the Agency can show that the

delay was due to exceptional circumstances and that the Agency is nonetheless acting with due

diligence to complete the request. *See* 5 U.S.C. § 552(a)(6)(C). OMB relies on the fact that it has

experienced an increase in the volume of requests it has received since 2017 and recent staff

reductions to demonstrate exceptional circumstances. Dkt. No. 19 at 12-13; Dkt. No. 21 at ¶¶ 27-

31. Generally, "predictable staffing limitations do not [] constitute 'exceptional circumstances.'"

*ACLU of Washington v. U.S. Dep't of Just.*, 2010 WL 11692313, at *2 (W.D. Wash. Jan. 19,

2010). In *ACLU of Washington*, the Court rejected similar arguments regarding unexpected

resignations and retirements stemming from the relocation of the FBI's Record/Information

Dissemination Section in Virginia. *Id.* Additionally, FOIA provides that "the term 'exceptional

circumstances' does not include a delay that results from a predictable agency workload of

requests under this section, unless the agency demonstrates reasonable progress in reducing its

backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). OMB presents no facts to demonstrate

"reasonable progress in reducing its backlog" prior to the recent staff shortages and, therefore,

cannot establish the delay was due to exceptional circumstances. *See ACLU of Washington*, 2010

WL 11692313, at *3. For these reasons, the Court need not decide whether OMB was acting

with due diligence, as its delay cannot be excused without a showing of exceptional

circumstances.

The Agency's equitable arguments are now essentially moot. OMB spends much of its opposition arguing that regardless of whether the Court finds that it has violated its FOIA obligations, the Court should exercise its equitable discretion to deny Washington's request for injunctive relief in the form of expedited production. Dkt. No. 19 at 14-17. Essentially, OMB argues that the balance of equities tilts in its favor because of the hardships an expedited production schedule would cause to its process, likely negatively effecting the processing of other requests, and because it would likely increase the risk of inadvertent disclosure of exempt records. *Id.* The Court notes that at the time OMB prepared its opposition briefing, the Agency was projecting being able to complete all productions by April 2022.[2] Dkt. No. 19 at 9. Thus, whatever the balance of equities may have been at the time, OMB has now had ample time, by its own estimation, and the records request should be nearly complete. Any argument against Washington's requested injunctive relief based on the balance of equities is no longer availing.

For these reasons, the Court GRANTS summary judgment for Washington due to OMB's failure to promptly produce requested records. As such, the Court ORDERS OMB to produce all remaining non-exempt public records responsive to the Washington's request **within 21 days** of the date of this Order. In line with the Court's order regarding expedited completion of all remaining productions and its concern regarding Washington's claims of insufficient information regarding exemptions, the Court ORDERS OMB to provide Washington with a complete and comprehensive *Vaughn* index **within ten (10) days** of completing its production (or **within ten (10) days** of the date of this order, if the production has already been completed). The Parties are further ORDERED to meet and confer regarding the exemptions and to prepare a joint status report regarding the scope of any remaining exemption issues and a proposed briefing schedule

---

[2] Heather Walsh, OMB Deputy General Counsel, stated in her declaration in support of Defendant's summary judgment response that document processing could be completed by March 30, 2022. Dkt. No. 21 at ¶ 19.

1  regarding unresolved exemption challenges by **no later than April 25, 2022**. The Court

2  anticipates the Parties will be able to narrow the scope of remaining exemption challenges

3  requiring Court intervention through this process.

4  C.     **Plaintiff's Request for a Status Conference**

5        The Court DENIES the request for a status conference as moot per this Order. The Parties

6  may request a status conference if warranted on alternate grounds.

7                               **IV.    ORDER**

8        Therefore, the Court GRANTS IN PART and DENIES IN PART Washington's motion for

9  summary judgement (Dkt. No. 13) and DENIES Washington's request for a status conference

10 (Dkt. No. 29). The Court further ORDERS that

11       1. OMB will produce to Washington all remaining non-exempt responsive records **within**

12 **twenty-one (21) days** of the date of this Order;

13       2. OMB will produce to Washington a complete and comprehensive *Vaughn* index

14 **within ten (10) days** of the completion of all remaining productions (or **within ten (10) days** of

15 the date of this Order if all productions have already been completed);

16       3. The Parties shall meet and confer to narrow the scope of any remaining exemption

17 challenges and shall prepare a joint status report and proposed dispositive motion briefing

18 schedule to be filed **no later than April 25, 2022**.

19       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

20 to any party appearing pro se at said party's last known address.

21       Dated this 18th day of March 2022.

22

23                                    _____
                                     Tana Lin
24                                    United States District Judge